IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 30, 2014 Session

# AMERICAN HERITAGE APARTMENTS, INC. v. THE HAMILTON COUNTY WATER AND WASTEWATER TREATMENT AUTHORITY, HAMILTON COUNTY, TENNESSEE

**Appeal from the Circuit Court for Hamilton County**
**No. 11C1207     Jacqueline S. Bolton, Judge**

---

**No. E2014-00302-COA-R3-CV-FILED-JANUARY 30, 2015**

---

The plaintiff, American Heritage Apartments, Inc. ("American Heritage"), commenced this lawsuit to protest a monthly flat charge in the amount of $8.00 per unit imposed by the defendant, The Hamilton County Water and Wastewater Authority ("the County WWTA"), on all of its sewer customers. The charge was instituted to fund a program designed to repair and refurbish private service laterals, defined as pieces of pipe that connect private property to the sewer lines. American Heritage sought declaratory judgment that the County WWTA, *inter alia*, had exceeded its authority by imposing an unjust and discriminatory charge. The County WWTA filed a motion to dismiss the complaint, which the trial court initially denied. Upon the County WWTA's amended motion to dismiss and motion for summary judgment, American Heritage's motion for partial summary judgment, and supplemental briefs submitted by both parties, the trial court granted summary judgment in favor of the County WWTA. The court found that because the Utility District Law of 1937, Tennessee Code Annotated §§ 7-82-101 to -804, provided an administrative procedure for contesting utility charges, no private right of action was available. The court further ruled that in the alternative, if a private right of action were allowed by this Court on appeal, American Heritage's complaint could be certified as a class action lawsuit. American Heritage has appealed. Having determined that the trial court erred by applying the Utility District Law of 1937 to a non-utility district water and wastewater treatment authority, we reverse the grant of summary judgment. We affirm the trial court's ruling regarding the class action certification.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, C.J., and D. MICHAEL SWINEY, J., joined.

Jimmy F. Rodgers, Chattanooga, Tennessee; J. Gerard Stranch, IV, Nashville, Tennessee; and Michael G. Stewart, Nashville, Tennessee, for the appellant, American Heritage Apartments, Inc.

J. Christopher Clem, Chattanooga, Tennessee, for the appellee, The Hamilton County Water and Wastewater Treatment Authority, Hamilton County, Tennessee.

**OPINION**

I. Factual and Procedural Background

The County WWTA was created by the Hamilton County Commission on May 19, 1993, through passage of a resolution pursuant to the Tennessee Water and Wastewater Treatment Authority Act ("WWTA Act"). *See* Tenn. Code Ann. §§ 68-221-601 to -618 (2013). The County WWTA is responsible for the public sewer system throughout the unincorporated areas of Hamilton County, as well as the surrounding incorporated municipalities of East Ridge, Lakesite, Lookout Mountain, Red Bank, Ridgeside, Signal Mountain, and Soddy Daisy.

The flat charge at issue was instituted as part of a Private Service Lateral Program ("PSLP") to provide funds for repair and refurbishment of private service laterals, defined by the County WWTA as the pieces of pipe that connect private property to WWTA-owned sewer lines. It is undisputed that the repairs are necessary to correct a problem of overflowing storm water entering or infiltrating the sewer system, which causes overflow of sewage into residential areas and the release of ineffectively treated sewage into the Tennessee River. The County WWTA instituted the PSLP in response to an order issued on March 20, 2008, by the Tennessee Department of Environment and Conservation ("TDEC") because the County WWTA's high influx of rain water violated the requirements of TDEC and the Environmental Protection Agency ("EPA"). TDEC ordered the County WWTA to initiate a corrective action plan before it would be allowed to connect any additional units on Signal Mountain to the sewer system. The County WWTA began its PSLP with Signal Mountain units, and the program included plans to extend repair to all private service laterals in the County WWTA's service area.[1]

_____

[1] The County WWTA Executive Director Cleveland T. Grimes testified through deposition that the County WWTA eventually began accessing the service laterals through easements rather than obtaining consent from landowners. The program title was subsequently changed to eliminate "private," becoming the "Service Laterals Program" or "SLP."

American Heritage is a nonprofit corporation operating a 168-unit apartment complex catering to low-income tenants in East Ridge, Tennessee. On August 19, 2011, American Heritage received a letter from the County WWTA, notifying American Heritage of the PSLP flat charge implementation. The letter included the following description of the County WWTA's method for applying the charge to American Heritage as a multi-unit building:

> The policy will use the number of apartment/rental units within a multi-unit building as a basis for the overall fee charged. Beginning next month, a fee of $8 per unit, based on 90 percent occupancy within your building, will be assessed on your bill. Our records indicate that you have 168 units.

American Heritage subsequently received monthly bills from WWTA in which the total PSLP charges exceeded $1,000.00.

On October 3, 2011, American Heritage filed a complaint seeking declaratory judgment that the implementation of a flat, per-unit PSLP charge (1) exceeded the authority granted the County WWTA pursuant to Tennessee Code Annotated § 7-35-401, (2) was unjust and inequitable, (3) breached the County WWTA's contracts with American Heritage and other users, and (4) violated article II, § 21 of the Tennessee Constitution by creating a monopoly. American Heritage also averred that its claims were appropriate for a class action lawsuit. The County WWTA filed a motion to dismiss the complaint on November 29, 2011, arguing, *inter alia*, that American Heritage, pursuant to the WWTA Act and Hamilton County WWTA bylaws, should have sought administrative remedies before resorting to filing its complaint. The County WWTA also asserted that American Heritage did not allege sufficient facts to support the requirements of a class action under Tennessee Rules of Civil Procedure 23.01 and 23.02 and that it failed to join the State of Tennessee as an indispensable party to the action.

The trial court, Judge L. Marie Williams presiding, denied the County WWTA's first motion to dismiss in an order entered January 31, 2012. The County WWTA filed an answer to the complaint on February 6, 2012. On December 11, 2012, American Heritage filed a motion for class certification, seeking certification of a class comprised of the following:

> All WWTA customers who are being or have been charged the [PSLP] Charge. Excluded from the Class are the WWTA itself, any person, firm, trust, corporation or entity related to or affiliated with the Defendant, any person employed by the Hamilton County Circuit Court and/or any owner of property that has been inspected or repaired pursuant to the PSLP.

The County WWTA subsequently filed its motion for summary judgment on February 1, 2013.

In an order entered February 12, 2013, the trial court ruled that pursuant to Tennessee Rule of Civil Procedure 23, it would hear American Heritage's motion for class certification before hearing the County WWTA's motion for summary judgment. Following a scheduling conference conducted on February 25, 2013, Judge Williams entered, *sua sponte*, an order of recusal "[u]pon review of the file, and for reasons explained to counsel for both parties . . . ." The case was subsequently assigned to Judge Jacqueline S. Bolton.

On April 19, 2013, the County WWTA filed a motion to amend its answer to assert new affirmative defenses, including the defense that because the County WWTA was a utility district, Tennessee Code Annotated § 7-82-402, regarding administrative procedures provided for protesting water rates within a utility district, applied. The trial court granted the County WWTA permission to amend its answer.

The County WWTA filed a second motion to dismiss the action on May 2, 2013, renewing its arguments that American Heritage had failed to pursue an administrative remedy and failed to join indispensable parties. Following argument from counsel, the trial court denied this second motion to dismiss in an order entered September 9, 2013. American Heritage subsequently filed a motion for partial summary judgment on September 13, 2013, seeking a ruling that the PSLP charge was inequitable.

On October 18, 2013, the trial court entered an Order noting the dispositive motions before it and directing the parties to analyze our Supreme Court's decision in *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850 (Tenn. 2010), in light of its potential application to this action. Each party filed a supplemental brief regarding *Brown*. Upon consideration of the parties' briefs, the trial court subsequently entered an order granting the County WWTA summary judgment on January 17, 2014.[2] The court found that "the case at hand is directly comparable to *Brown*" and that "under the statutory scheme in T.C.A. § 7-82-402, the procedure for contesting the utility charges is presented with no express right for the plaintiff to recover charges by private action." The court further ruled that in the alternative, if a private right of action were allowed by this Court, American Heritage's complaint could be brought as a class action lawsuit. American Heritage timely appealed the grant of summary judgment to the County WWTA.

---

[2]The trial court *sua sponte* entered an amended final judgment, adding assessment of court costs, on May 6, 2014.

-4-

## II. Issues Presented

American Heritage presents two issues on appeal, which we restate as follows:

1.  Whether the trial court erred by applying the Utility District Law of 1937, Tennessee Code Annotated §§ 7-82-101 through -804, to the County WWTA, thereby awarding summary judgment to the County WWTA.

2.  Whether the trial court erred by interpreting Tennessee Code Annotated § 7-82-402 as an exclusive remedy, thereby excluding a ratepayer's *ultra vires* challenge to allegedly discriminatory water and sewer charges.

In addition, WWTA raises three issues on appeal, which we restate as follows:

3.  Whether the trial court erred by ruling that if a private right of action were allowed by this Court, American Heritage's complaint could be brought as a class action lawsuit pursuant to Tennessee Rule of Civil Procedure 23.

4.  Whether the trial court erred by failing to find that the Tennessee State Comptroller and the Tennessee Department of Environment and Conservation were indispensable parties to the instant action.

5.  Whether the trial court erred by failing to dismiss American Heritage's complaint for failure to state a claim or valid cause of action.

## III. Standard of Review

For actions initiated on or after July 1, 2011, such as the one at bar, the standard of review for summary judgment delineated in Tennessee Code Annotated § 20-16-101 (Supp. 2013) applies. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011). The statute provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> (1)  Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2)     Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.[3]

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). "A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Dick Broad. Co.*, 395 S.W.3d at 671 (citing Tenn. R. Civ. P. 56.04; *Hannan v. Alltell Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has recently instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

As to statutory construction, our Supreme Court has summarized the principles involved as follows:

When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose

---

[3]As this Court has explained:

Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan* [*v. Alltell Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)], which permitted a trial court to grant summary judgment only if the moving party could either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012).

*Walker v. Bradley County Gov't*, No. E2013-01053-COA-R3-CV, 2014 WL 1493193 at *3 n.3 (Tenn. Ct. App. Apr. 15, 2014). *See also Sykes*, 343 S.W.3d at 25 n.2.

and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

## IV. Private Right of Action

### A. Inapplicability of the Utility District Law of 1937

American Heritage contends that the trial court erred by applying the Utility District Law of 1937 ("UDL"), Tenn. Code Ann. §§ 7-82-101 to -804 (Supp. 2014), to the County WWTA because the WWTA is not a utility district. The County WWTA argues that the trial court properly applied the UDL to find that American Heritage failed to seek the administrative remedy provided by Tennessee Code Annotated § 7-82-401(d)(4)[4] and therefore was precluded from pursuing a private right of action. Upon our thorough review of the record and the applicable statutes, we determine that the trial court erred by applying the UDL to the County WWTA.

---

[4]Pursuant to Tennessee Code Annotated § 7-82-401(d)(4), each utility district is required to issue an annual statement "of the water rates then being charged by the district." If a water user believes the published rates are too high or too low, he or she may file a protest within thirty days of the statement's publication. *See* Tenn. Code Ann. § 7-82-402 (delineating the procedure for filing such a protest and for a subsequent hearing before the county commission).

In granting summary judgment, the trial court stated the following in pertinent part:

The case at hand is a dispute over charges Defendant wastewater company has instituted as part of funding for a program to inspect and repair private sewer lines. The material facts of the case are undisputed. Defendant argues that because it is a governmental utility the proper procedure for contesting the charge at issue is laid out by Tennessee Code Annotated Section 7-82-402. The defendant adds that Tennessee Code Annotated Section 7-34-115(f) gives complete authority in determining municipality fund violations to the Tennessee Comptroller. Therefore, the central issue in this case is whether Plaintiff has a private right of action against the defendant utility company or whether Tennessee utility legislation [preempts] the action.

In *Brown v. Tennessee Title Loans, Inc.*, a similar issue was heard by the Tennessee Supreme Court. 328 S.W.3d 850 (Tenn. 2010). In *Brown*, the plaintiffs filed suit to contest what they believed to be excessive interest and fees charged by Tennessee Title Loans, Inc., a title pledge lender. *Id.* The Tennessee Supreme Court granted interlocutory appeal in order to answer a question of first impression regarding whether the Tennessee Title Pledge Act, a regulatory scheme over the loan industry, allowed for a right of private action. *Id.* In its analysis, the Tennessee Supreme Court reasoned that there was neither express language granting the right of private action nor legislative intent to do so. *Id.* The Tennessee Supreme Court further stated: "The courts of this state have refused to imply a private right of action in regulatory statutes enforced through governmental remedies." *Id.* at 860. Therefore, the Court found that the plaintiffs must "bear the burden of establishing that the legislature was 'manifestly clear' [in] its intent to imply a private right of action." *Id.* at 863. The plaintiffs failed to carry this burden in *Brown*. *Id.*

The Court finds that the case at hand is directly comparable to *Brown*. Tennessee Code Annotated Section 68-221-101 is a regulatory scheme over the public utilities in Tennessee. Tennessee Code Annotated Section 7-82-402 provides the process by which the utility rates may be contested. The plaintiff attempts to distinguish this case from *Brown* by arguing that instead of asserting a private right of action, it simply seeks to recover charges that have been imposed without any statutory authorization or justification. However, under the statutory scheme in T.C.A. § 7-82-402, the procedure for contesting the utility charges is presented with no express right for the plaintiff to recover the charges by private action nor any implied intent that there be a right to private action. Pursuant to the reasoning of the Tennessee Supreme Court in

*Brown*, the plaintiff must show that a right to private action be "manifestly clear" since the defendant utility is governed by a regulatory statute. 328 S.W.3d at 863. The Court holds that the plaintiffs have not met their burden in this case. Therefore, the plaintiff's motion for partial summary judgment shall be denied and defendant's motion for summary judgment shall be granted.

We disagree with the trial court's finding on this issue and determine Tennessee Code Annotated § 7-82-402 of the UDL to be inapplicable to the instant action. According to the sworn affidavit of Executive Director Cleveland T. Grimes, the County WWTA was created on May 19, 1993, by the Hamilton County Commission with the passage of its resolution number 593-60, in accordance with the provisions of the WWTA Act. *See* Tenn. Code Ann. §§ 68-221-601 to -618 (Supp. 2014). The WWTA Act consists of Part 6 within Chapter 221 of Title 68 of the Code. Title 68 of the Code is entitled "Safety and Environmental Protection." Chapter 221 is entitled "Water and Sewerage" and was enacted by Chapter 52 of the Public Acts of 1945. *See Harpeth Valley Utilities, Dist. of Davidson & Williamson Counties v. Metro. Gov't of Nashville & Davidson County*, No. 01A01-9711-CH-00686, 1998 WL 313397 at *3 (Tenn. Ct. App. 1998). The WWTA was enacted by Chapter 605, Public Acts of 1974. *See id.* Pursuant to section 68-221-617 of the WWTA Act, "[t]his part shall be liberally construed to effect the purposes hereof, and insofar as this part may be inconsistent with any other law, this part shall be controlling."

In regard to the creation of water and wastewater authorities under the WWTA Act, Tennessee Code Annotated § 68-221-602(a) provides:

(a)     It is declared that water and wastewater treatment authorities created pursuant to this part shall be public and governmental bodies acting as agencies and instrumentalities of the creating and participating governmental entities . . . .

As used in the WWTA Act, a "creating governmental entity" means "any city, metropolitan government or county which creates an authority pursuant to this part." Tenn. Code Ann. § 68-221-603(4). A "participating governmental entity" means:

any utility district, metropolitan government, city, town or county; which utility district, city, town or county, pursuant to a resolution of its governing body, shall have sold, leased, dedicated, donated or otherwise conveyed its water or wastewater treatment works, or both, or a portion thereof, to the

authority for operation by the authority in order to make such treatment works an operational part of its treatment works.

Tenn. Code Ann. § 68-221-603(7).

The County WWTA oversees the public sewer system throughout the unincorporated areas of Hamilton County, as well as the surrounding incorporated municipalities of East Ridge, Lakesite, Lookout Mountain, Red Bank, Ridgeside, Signal Mountain, and Soddy Daisy. In accordance with its bylaws and the WWTA Act, the County WWTA is governed by a Board of Commissioners composed of representatives from Hamilton County and the seven incorporated cities that joined in the WWTA's formation. Pursuant to Tennessee Code Annotated §§ 68-221-605(a) and (b), the County WWTA was created as an agency and instrumentality of Hamilton County and the municipalities noted above. This formation required a specific process delineated by the WWTA Act, including, *inter alia*, a resolution to conduct a hearing, notification to the affected public, a public hearing, determination by the governing body that "the public convenience and necessity require the creation of an authority," adoption of a resolution or ordinance creating the authority, and filing of such a resolution or ordinance with the secretary of state. *See* Tenn. Code Ann. § 68-221-604. "[U]pon such adoption and filing, the authority shall constitute a body politic and corporate, with all the powers hereinafter provided." Tenn. Code Ann. § 68-221-604(d)(2).

In contrast, the UDL provides a specific process to be followed for the creation of a utility district. *See* Tenn. Code Ann. § 7-82-201(a). The UDL consists of Chapter 82 within title 7 of the Code. It was originally enacted as Chapter 248 of the Public Acts of 1937. *See Harpeth Valley Utilities,* 1998 WL 313397 at *2. Title 7 of the Code is entitled "Consolidated Governments." In particular, Tennessee Code Annotated § 7-82-201(a) provides for the creation of a utility district through the filing of a petition for incorporation with the state's utility management review board, as well as to "the county mayor of any county in which the proposed district is situated . . . ." The petition must contain specific, detailed information, including, *inter alia*, the "proposed corporate name and boundaries of the district," as well as a statement "showing why existing utility districts, or municipal or county services, could not adequately provide the needed service . . . ." *Id.* Upon the utility management review board's approval of the petition, it is forwarded for public hearing to the county mayor of any county the proposed district will serve. *See* Tenn. Code Ann. § 7-82-202(a). Following a public hearing, if the county mayor determines certain criteria have been met, he or she "shall enter an order so finding, approving the creation of the district, designating it as 'the _____ Utility District of _____ County, Tennessee . . . ." *Id.* at (a)(2). A true and correct copy of the order creating a utility district shall be filed with "the secretary of state, the utility management review board and with the register of deeds of the county or counties wherein the district is located . . . ." *Id.* at (d).

-10-

The record before us contains no indication that the County WWTA has undergone the statutorily prescribed process of becoming a utility district pursuant to the UDL. *See* Tenn. Code Ann. §§ 7-82-201, 202. Nevertheless, the County WWTA asserts that it is a utility district as defined by Tennessee Code Annotated § 7-82-701(a), which provides:

>   (a)   There is hereby created in the office of comptroller of the treasury a utility management review board for the purpose of advising utility district boards of commissioners in the area of utility management. Effective July 1, 1989, notwithstanding the provisions of any law to the contrary, the utility management review board created by this section is vested with authority over all utility districts established pursuant to this chapter or by any public or private act. <u>For purposes of this part, "utility district" includes agencies, authorities or instrumentalities of government created by public or private act having the authority to administer a water or wastewater facility, other than those agencies, authorities or instrumentalities of government electing pursuant to § 68-221-1006(a) or § 68-221-1206(a) to come under the jurisdiction of the water and waste water financing board.</u>[5]

(Emphasis added.) As American Heritage notes, this expanded definition of a "utility district" is included only in Part 7 of the UDL. Tennessee Code Annotated § 7-82-701(a) explicitly states that the purpose of Part 7 is to establish an advisory utility management review board. The portion of the Part 7 definition of a "utility district" emphasized above was added by the General Assembly through a 2002 amendment. 2002 Tennessee Laws Pub. Ch. 603 (H.B. 3140) § 11. Within 2002 Public Chapter 603, the General Assembly also amended subsections of the Wastewater Facilities Act of 1987, Tenn. Code Ann. §§ 68-221-1001 to 1015, and the Drinking Water Revolving Loan Fund Act of 1997, Tenn. Code Ann. §§ 68-221-1201 to -1206. Our review of these 2002 amendments reveals no other expansion of the "utility district" definition apart from that specifically ascribed to Part 7 of the UDL. Moreover, while Part 7 includes a statutory structure for review of utility districts' financial statements and reports, with the possibility of a prescribed rate structure, it includes no administrative recourse for users protesting rates. *See id.* at -703.

Upon our thorough review of the plain language of the statute, we agree with American Heritage's position that the specific inclusion of water and wastewater authorities in the definition of utility districts in Part 7 excludes such authorities from the definition of

---

[5]According to Mr. Grimes's sworn affidavit, the County WWTA had never elected to come under the jurisdiction of the water and wastewater financing board pursuant to Tennessee Code Annotated §§ 68-221-1006(a) or -1206(a).

utility districts in the other parts of the Act in which they are not specified. *See Bryant v. Baptist Health Sys. Home Care of E. Tenn.*, 213 S.W.3d 743, 749 (Tenn. 2006) ("'A fundamental rule of statutory construction is that the mention of one subject in a statute means the exclusion of other subjects that are not mentioned.'") (quoting *Phillips v. Tenn. Tech. Univ.*, 984 S.W.2d 217, 219 (Tenn. 1998)). We conclude that the trial court erred by applying the administrative remedies available to utility users under the UDL to the instant action and thereby erred by finding that American Heritage had failed to pursue said remedies.

## B.  WWTA Act

Our determination that the trial court erred in applying the UDL begs the question of whether, given proper application of the WWTA Act to this action, the same result would be reached. *See Cont'l Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986) ("Suffice it to say that this Court will affirm a decree correct in result, but rendered upon different, incomplete, or erroneous grounds."). Relying on *Brown*, 328 S.W.3d at 863, the trial court found that because the UDL provided a "procedure for contesting the utility charges" "with no express right for the plaintiff to recover the charges by private action nor any implied intent that there be a right to private action," American Heritage was unable to meet its burden of showing a clear right to private action. Narrowing the issue at hand to whether American Heritage was able to show a private right of action under the WWTA Act, we conclude that American Heritage met this burden.

In *Brown*, our Supreme Court delineated a two-step analysis for determining whether a legislative act creates a private right of action. *Brown*, 328 S.W.3d at 854 (applying the analysis to hold that at the time the plaintiffs filed the action, "the Tennessee Title Pledge Act contained no private right of action on behalf of pledgors against title pledge lenders for charging excessive interest and prohibited fees."). The first step is to determine whether the "express statutory language" of the act creates a private right of action, and if it does not, the second step of the analysis is to "determine whether the legislature intended to create a private right of action." *Id.* at 855. As the *Brown* Court explained:

> If a statute does not expressly create a private right of action, our next inquiry is whether the legislature otherwise indicated an intention to imply such a right in the statute. In this analysis, we look to the statutory structure and legislative history. Appropriate factors to consider include (1) whether the party bringing the cause of action is an intended beneficiary within the protection of the statute, (2) whether there is any indication of legislative intent, express or implied, to create or deny the private right of action, and (3) whether implying such a remedy is consistent with the underlying purposes of

the legislation. The burden ultimately falls on the plaintiff to establish that a private right of action exists under the statute.

*Id.* at 855-56 (footnote and internal citations omitted).

Looking to the plain language of the WWTA Act, we note first that water and wastewater treatment authorities are created as public and governmental bodies. Tennessee Code Annotated § 68-221-602(a) provides:

> (a)    It is declared that water and wastewater treatment authorities created pursuant to this part shall be public and governmental bodies acting as agencies and instrumentalities of the creating and participating governmental entities; and that the acquisition, operation and finance of water and wastewater treatment works by such authorities is declared to be for a public and governmental purpose and a matter of public necessity.

As one of its initial affirmative defenses, the County WWTA asserted in its amended answer that pursuant to the doctrine of sovereign immunity, "all [state law] claims of the Plaintiff are governed by the Tennessee Tort Liability Act." In general, governmental entities possess sovereign immunity from lawsuits except as they consent to be sued. *See Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). The Governmental Tort Liability Act ("GTLA"), codified in 1973, governs tort claims against counties, municipalities, and other local government agencies, providing for circumstances when sovereign immunity is removed. *See* Tenn. Code Ann. §§ 29-20-201 to -207; *Lucius v. City of Memphis*, 925 S.W.2d 522, 525 (Tenn. 1996). This Court previously has held that a utility district created pursuant to the UDL was "clearly qualifie[d]" for governmental immunity from tort actions. *See Harpeth Valley Utilities*, 1998 WL 313397 at \*8. In contrast, this Court has held that a railroad authority, created pursuant to Tennessee Code Annotated § 7-56-201, *et seq.* was not entitled to governmental immunity from tort actions because it was governed by local governments and not controlled by laws governing state entities. *See Nat'l Adver., Inc. v. McCormick Ashland City & Nashville RR, Inc.*, 936 S.W.2d 256, 258 (Tenn. Ct. App. 1996). We determine that as a governmental body created under and governed by the WWTA Act, the County WWTA is qualified for governmental immunity from tort actions, except as that immunity is removed by the Tennessee Governmental Tort Liability Act. *See generally Campbell v. City of Knoxville*, 505 S.W.2d 710, 711 (Tenn. 1974) (concluding that the operation of a sewage plant "is a governmental rather than a proprietary function" and that "the primary purpose for the existence of a sewage plant is for the protection of the public health.").

American Heritage, however, has not alleged a tort action. In disputing the monthly PSLP charge, American Heritage brought an *ultra vires* claim that the County WWTA exceeded its statutory authority by imposing the flat, per-unit rate to all customers regardless of water usage or need for repair, and it also asserted that the County WWTA breached its contract with American Heritage as a customer. Governmental immunity does not extend to *ultra vires* claims. *See City of Lebanon v. Baird*, 756 S.W.2d 236, 241 (Tenn. 1988) (explaining that "[u]nder Tennessee law, a municipal action may be declared *ultra vires* for either of two reasons: (1) because the action was wholly outside the scope of the city's authority under its charter or a statute, or (2) because the action was not undertaken consistent with the mandatory provisions of its charter or a statute.") (internal citation omitted). Governmental immunity also does not extend to contract actions. *See Lucas v. State*, 141 S.W.3d 121, 126 (Tenn. Ct. App. 2004) ("Its [the county's] liability to suit only extends to matters of contract and not to torts or the negligence of its employees.").

Within the WWTA Act, Tennessee Code Annotated § 68-221-607(a) delineates sixteen powers of authority granted to water and wastewater treatment authorities, providing particularly in relevant part:

(a)    An authority has all powers necessary to accomplish the purposes of this part (excluding the power to levy and collect taxes) including, but not limited to, the following:

   (1)    Have perpetual succession, sue and be sued, and adopt a corporate seal;

   (2)    Plan, establish, acquire, construct, improve and operate one (1) or more treatment works within or without the creating and participating governmental entities and within this state and within any adjoining state;

   (3)    Acquire real or personal property or any interest therein by gift, lease or purchase, for any of the purposes herein provided; and to sell, lease or otherwise dispose of any such property;

   (4)    Enter into agreements with the creating governmental entity or with participating governmental entities, to acquire by lease, gift, purchase or otherwise, any treatment works, or property related thereto, of such governmental entity and operate such treatment works as a part of its treatment works; . . .

-14-

(5)     Enter into agreements with the creating governmental entity and participating governmental entities with respect to the manner of transfer of treatment works employees of such governmental entities to the authority, . . .;

. . .

(8)     Make application directly to the proper federal, state, county and municipal officials and agencies, or to any other source, public or private, for loans, grants, guarantees or other financial assistance in aid of treatment works operated by it, and accept the same;

. . .

(10)    Have control of its treatment works with the right and duty to establish and charge fees, rates and other charges, as set out herein, and collect revenue therefrom, not inconsistent with the rights of the holders of its bonds; . . .

It is clear from reading the statutory sections quoted above and the WWTA Act as a whole that the legislature contemplated that a water and wastewater treatment authority would constitute a separate entity with its own authority to "sue and be sued." *See id.* This Court has explained the comparable status of an airport authority created by a municipality according to a state act as follows:

It is apparent from reading the [Metropolitan Airport Authority] Act that the legislature contemplated that an airport authority created under the Act would constitute a separate entity. While the City is the creating municipality, Tenn. Code Ann. § 42-4-102, the City, upon creation of the airport authority, must adopt a resolution and thereafter "enter into an agreement with the authority for the orderly transfer to the authority of the airport properties, functions, and outstanding obligations of such municipalities." Tenn. Code Ann. § 42-4-104(d)(1) (2003). This resolution is then filed with the secretary of state's office, where "upon such adoption and filing, the authority shall constitute a body politic and corporate, with all the powers hereinafter provided." Tenn. Code Ann. § 42-4-104(c)(2) (2003). Once created, the airport authority can sue and be sued, Tenn. Code Ann. § 42-4-107(2) (2003); acquire real or personal property by gift, lease, or purchase, Tenn. Code Ann. § 42-4-107(3) (2003); enter into contractual agreements with the creating municipality, Tenn.

-15-

Code Ann. § 42-4-107(4) (2003); apply directly for grants or other financial assistance, Tenn. Code Ann. § 42-4-107(8) (2003); the City may transfer its interest in land to the airport authority by sale, lease, or gift, Tenn. Code Ann. § 42-4-108 (2003); and the airport authority may "borrow money for any of its corporate purposes and issue its revenue bonds," Tenn. Code Ann. § 42-4-109(a)(1) (2003). Accordingly, the Act contemplates that the Airport Authority, once created, constitutes a separate and distinct entity.

*City of Memphis v. Civil Serv. Comm'n of City of Memphis*, No. W2003-02799-COA-R3-CV, 2004 WL 3021120 at *6-8 (Tenn. Ct. App. Dec. 29, 2004) (affirming the trial court's finding that the City of Memphis Civil Service Commission had exceeded its authority because the Commission's charter permitted it to review employee disciplinary actions taken by the City but not those taken by another agency, in this case the Memphis-Shelby County Airport Authority).

The express language of the WWTA Act therefore provides for creation of water and wastewater treatment authorities as public entities with the power to sue and be sued subject to the limitations of governmental immunity noted above. The WWTA Act provides no administrative remedy, such as that provided within the UDL, for American Heritage's claims. Moreover, considering the *Brown* factors in light of the record as a whole, we determine that (1) as a customer of the County WWTA, American Heritage is an intended beneficiary of the protection provided by the WWTA Act, particularly Tennessee Code Annotated § 68-221-608 regarding charges for services; (2) express legislative intent granting the County WWTA the authority to "sue or be sued" is stated in Tennessee Code Annotated § 68-221-607(a)(1), and there is no indication of legislative intent, express or implied, to deny a private right of action; and (3) implying a private right of action, consistent with the constraints of governmental immunity, is consistent with the underlying "public and governmental purpose" of the WWTA Act as stated in Tennessee Code Annotated § 68-221-602(a). *See Brown*, 328 S.W.3d at 855-56. The trial court erred in granting summary judgment to the County WWTA based on lack of a private right of action.

## V. Exclusivity of Administrative Remedy

American Heritage also contends that the trial court erred by finding that the administrative remedy provided in Tennessee Code Annotated § 7-82-402 is exclusive and precludes a private right of action. Having determined that the UDL, and thus the administrative remedy provided in the statute at issue, do not apply to the instant action, we further determine that this issue is pretermitted as moot.

-16-

## VI. Class Action Certification

The County WWTA raises the issue of whether the trial court erred by ruling in its order granting summary judgment that "if the appellate court decides that the plaintiff has a private right of action, this court holds that the plaintiff's motion for class certification should subsequently be granted." American Heritage asserts that this issue was not adjudicated by the trial court in its judgment and should therefore not be addressed by this Court on appeal. We note, however, that in making a class action ruling, the trial court was clearly attempting to conserve needless litigation in the event that this Court reversed summary judgment, and we accordingly exercise our discretion to address the trial court's alternative ruling. *See* Tenn. R. App. P. 13(b). As this Court has explained previously:

> [W]e have found several cases that have considered alternative rulings by the trial court, or even encouraged such rulings. *See, e.g., Gerdau Ameristeel, Inc. v. Ratliff*, 368 S.W.3d 503, 508 (Tenn. 2012) (directing trial courts in workers compensation cases to make alternative rulings in order to prevent delay); *BancorpSouth Bank v. 51 Concrete, LLC*, No. W2011-00505-COA-R3-CV, 2012 WL 1269180, at *6 (Tenn. Ct. App. April 16, 2012) (reversing the trial court's ruling that it did not have subject matter jurisdiction, but affirming as to the trial court's alternative rulings on the merits of the case).

*Stovall v. UHS of Lakeside, LLC*, No. W2013-01504-COA-R9-CV, 2014 WL 2155345 at *8 n.8 (Tenn. Ct. App. Apr. 22, 2014) (affirming the trial court's denial of a motion to dismiss a health care liability action on both the court's initial finding of the appellee's substantial compliance with the statute and its alternative finding allowing a motion for extension). Moreover, we conclude that the trial court did not abuse its discretion by ruling that a class action would be appropriate in this case.

Regarding the discretionary standard of review applicable to the grant or denial of class certification, this Court has explained:

> A trial court's decision on class certification is entitled to deference. *See Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 637 (Tenn. 1996). The grant or denial of class certification is discretionary, and the court's decision will stand absent abuse of that discretion. *Id.* (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)). The abuse of discretion standard typically applies when a choice exists in the trial court among several acceptable alternatives. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999)). Because the trial court is vested with the

responsibility to make that choice, a reviewing court cannot second-guess the lower court's judgment or merely substitute an alternative it finds preferable. *Id.* at 524 (citations omitted). A reviewing court must instead affirm the discretionary decision so long as reasonable legal minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). The same principles apply here; a trial court's certification decision must stand if reasonable judicial minds can differ about the soundness of its conclusion. *Freeman v. Blue Ridge Paper Prod., Inc.*, 229 S.W.3d 694, 703 (Tenn. Ct. App. 2007) (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). "The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny." *Beecher*, 312 S.W.3d at 524 (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)).

A trial court's discretion is not unbounded. *Cf. Gulf Oil v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). A trial court must consider controlling legal principles and relevant facts when making a discretionary decision. *Beecher*, 312 S.W.3d at 524 (citing *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). A trial court abuses its discretion if it (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous evaluation of the evidence. *Elliott v. Cobb*, 320 S.W.3d 246, 249-50 (Tenn. 2010) (citation omitted); *see also Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 308 (Tenn. 2008) (citation omitted). Additionally, a trial court abuses its discretion if it "strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Beech*, 312 S.W.3d at 524 (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

Appellate courts review a trial court's discretionary decision to determine "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* at 524-25 (citing *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008)).

*Roberts v. McNeill*, No. W2010-01000-COA-R9-CV, 2011 WL 662648 at *3-4 (Tenn. Ct. App. Feb. 23, 2011); *see also Haiser v. Haines*, No. 2013-02350-COA-R3-CV, 2014 WL 7010723 at *2-3 (Tenn. Ct. App. Dec. 12, 2014).

In *Roberts*, this Court further explained the requirements for consideration of class action certification as follows:

> Rule 23 of the Tennessee Rules of Civil Procedure governs class action certification. *Walker*, 249 S.W.3d at 307 (citing *Hamilton v. Gibson Cnty. Util. Dist.*, 845 S.W.2d 218, 225 (Tenn. Ct. App. 1992)). The burden is on the proponent of the class certification to demonstrate that a class action is appropriate. *Id.* This burden is two-fold. The proponent must first satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23.01. *Id.* at 307-08 (citing Tenn. R. Civ. P. 23.01). Rule 23.01 permits class certification if
>
> > (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.
>
> Tenn. R. Civ. P. 23.01. The proponent of class certification must demonstrate compliance with each of Rule 23.01's requirements. *Walker*, 249 S.W.3d at 307-08.
>
> The proponent must next establish the class action is maintainable under Rule 23.02. *Id.* at 308. In contrast to Rule 23.01, the proponent of class certification must establish only one Rule 23.02 basis for the maintenance of a class action. Rule 23.02 provides three bases for class action certification:
>
> > (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> >
> > > (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for [a] party opposing the class, or

(b)     adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interest; or

(2)     the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3)     the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

Tenn. R. Civ. P. 23.02. Class certification is permissible only if the proponent demonstrates compliance with both Rule 23.01 and Rule 23.02. *Freeman*, 229 S.W.3d at 702 (citing *Hamilton*, 845 S.W.2d at 225).

*Roberts*, 2011 WL 662648 at *4-5; *see also Haiser*, 2014 WL 7010723 at *3-4.

In the instant action, the trial court in its final judgment made the following alternative ruling regarding American Heritage's motion for class certification:

In the alternative, if the appellate court holds that the plaintiff does have a right to private action against the defendant, the court finds that plaintiff has satisfied the four prerequisites under Tennessee Rule of Civil Procedure 23.01. . . . First, the plaintiff has demonstrated that approximately 25,795 customers

-20-

of the defendant utility are affected by the rate at issue in this case, making joinder of all members of the class impracticable. Second, the plaintiff's claims are based upon a charge uniformly imposed across the entire class. Therefore, questions of law or fact as well as claims or defenses of the class would also be uniform. Finally, due to the nature of the issue, the plaintiff would fairly protect the interest of the class because the plaintiff's interest is identical to that of the rest of the class. The plaintiff argues that because it owns and pays the utility for multiple units, it would adjudicate this case vigorously on behalf of the class because it has more money at stake than some of the class members.

The plaintiff has also demonstrated that a class is maintainable under Tennessee Rule of Civil Procedure 23.02. In its memorandum in support of its motion for class certification the plaintiff states, "Individual actions would, in this case, give rise to the risk of the varied interpretation of legal and factual issues with respect to like-situated plaintiffs. Any case challenging the [utility's charge] will necessarily turn on the determination of [this case.]" Memo. In Support of Motion for Class Cert. 14. Again, this court agrees. The issues present in this case are common to those of the entire class. Thus, if the appellate court decides that the plaintiff has a private right of action, this court holds that the plaintiff's motion for class certification should subsequently be granted.

We agree with the trial court on this issue. The County WWTA does not dispute the trial court's finding that American Heritage demonstrated the four Tennessee Rule of Civil Procedure 23.01 findings for class certification: numerosity, commonality, typicality, and adequacy of representation. Instead, the County WWTA contends that American Heritage failed to demonstrate that a class action would be the "superior" method by which to fairly and efficiently adjudicate the controversy pursuant to Tennessee Rule of Civil Procedure 23.02(c). This somewhat tautological argument is grounded in the County WWTA's contention that the administrative remedy provided in the UDL is superior to a class action suit. As we have determined the UDL to be inapplicable to the instant action, this argument is unavailing.

In addition, we note that Rule 23.02 provides three alternative grounds for finding a class action maintainable with a finding of "superiority" being the third. *See* Tenn. R. Civ. P. 23.02(3). The trial court in its analysis focused on the first of these alterative grounds: that the prosecution of separate actions would create (a) "[i]nconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for a party opposing the class," or (b) "[a]djudications

with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications . . . ." Upon our careful and thorough review of the record, we discern no abuse of discretion in the trial court's alternative holding that upon our reversal of summary judgment, American Heritage's motion for class certification should be granted.

## VII.  Appellee's Remaining Issues

Finally, the County WWTA asserts that the trial court erred by (1) failing to require American Heritage to join the Tennessee State Comptroller and the Tennessee Department of Environment and Conservation as indispensable parties pursuant to Tennessee Rules of Civil Procedure 12 and 19 and (2) failing to grant summary judgment in favor of the County WWTA on the basis that American Heritage failed to state a valid cause of action.  Although the trial court made an initial determination denying the County WWTA relief as to both of these issues in an order denying the first motion to dismiss, the County WWTA renewed its defense regarding indispensable parties in a second motion to dismiss and its defense regarding failure to state a claim in its motion for summary judgment.  Upon our review of the judgment and the record as a whole, we determine that the trial court did not address these remaining issues in the final judgment because the issues were rendered moot by the court's decision.  These issues are therefore not ripe for appellate review and will be addressed by the trial court on remand.  *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented <u>and decided</u> in the trial courts . . . .") (emphasis added).

## VIII.  Conclusion

The judgment of the trial court granting summary judgment to the County WWTA is reversed.  The alternative ruling of the trial court granting American Heritage class certification in the event of a reversal of summary judgment is affirmed.  Costs on appeal are taxed to the appellee, the Hamilton County Water and Wastewater Treatment Authority.  This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below and further proceedings consistent with this opinion.

_____
THOMAS R. FRIERSON, II, JUDGE